**ROSE et al. v. UNITED STATES et al.**

**No. 17947.**

District Court, E. D. New York.

March 14, 1947.

J. Vincent Keogh, U. S. Atty., by Bigham, Englar, Jones & Houston, all of New York City (John L. Quinlan, of New York City, of counsel), for respondent United States.

Bigham, Englar, Jones & Houston, of New York City (John L. Quinlan, of New York City, of counsel), for respondent Isbrandtsen Co., Inc.

William A. Butler, of Brooklyn (Harry J. McDermott, of Brooklyn, of counsel), for libelants.

KENNEDY, District Judge.

Libelants' intestate, Bernard Rose, an employee of Todd Shipyards, was injured on May 4, 1944, while working in the hold of a ship called the Isaac Hopkins, owned by respondent United States of America, and operated by Isbrandtsen Company, Inc. Rose died on May 19, 1944. Letters of Administration were issued to libelants by the Surrogate's Court of Kings County on May 17, 1946. The libel was filed on May 20, 1946, which fell on Monday, and was one day more than two years after the death of libelants' intestate. The claim asserted in that libel is based upon the New York death statute, Decedent Estate Law, Consol.Laws, c. 13, § 130. Each respondent has filed exceptions, urging that on its face the claim is barred by the two-year limitation contained in the New York statute which libelants invoke. The latter offer an explanation of the delay in the commencement of suit. They say that until August 15, 1945 they were unable to discover the name of the operating company (Isbrandtsen) and, further, that they were slow in securing Letters of Administration because of a mistaken effort on their part to bring about the appointment of decedent's brother (who had retained libelants' proctor on May 31, 1944) rather than his parents, who were both of advanced years. On May 18, 1946, an attempt was made to file this libel. That was Saturday, and libelants' proctor arrived at the office of the clerk of this court, as he says, at 12:15 P.M. only to find it closed. He then returned and filed the libel on May 20, 1946.[1] I set these matters forth in detail now; the bearing that they have on the decision of this motion will be made clear presently.

At the argument there was no disagreement between the advocates on two points: (1) The last day to file the libel was actually May 19, 1946, and (2) the fact that this day happened to be Sunday, standing by itself, does not enlarge the statutory period, nor does it affect decision in any other way, as matter of law.

It is familiar learning that the admiralty will not permit rights arising under general maritime law to be whittled down by state statutes of limitation. In that situation, clearly the question is whether, regardless of state statutes, the remedy in admiralty should be barred because of laches on the part of the suitor who invokes it, meaning unexcused delay on his part accompanied by detriment to his adversary. Absent any excuse, the admiralty will, however, follow and apply the state statute of limitations, even if the controversy involves rights under general maritime law. Schiavone-Bonomo Corp. v. Buffalo Barge Towing Corp., 2 Cir., 1942, 132 F.2d 766, rehearing denied 2 Cir., 134 F 2d 1022. But the remedy for wrongful death was unknown to the maritime law. Lindgren v. United States, 1930, 281 U.S. 38, 50 S.Ct. 207, 74 L.Ed. 686. It was, however, adopted and enforced long ago. The Harrisburg, 1886, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358. And, since the Harrisburg decision, enforcement of state wrongful death statutes in the admiralty has been expressly justified. (Western Fuel Co. v. Garcia, 1921, 257 U.S. 233, 42 S.Ct. 89, 66 L.Ed. 210) under the "maritime but local" doctrine, i. e., the nature of the remedy is such that it does not affect the uniformity requirement in admiralty. Cf. Southern Pacific Co. v. Jensen, 1917, 244 U.S. 205, 37 S.Ct. 524, 61 L. Ed. 1086, L.R.A.1918C, 451, Ann.Cas.1917E, 900.

In the case of Western Fuel Co. v. Garcia, supra, it was clearly held that the fed-

---

[1] As the Second Circuit Court of Appeals has pointed out (Joint Council Dining Car Employees Local 370, et al. v. Delaware, L. & W. R. Co., infra, 2 Cir., 1946, 157 F.2d 417, 420), the libel here could have been filed on Saturday, May 18, 1946, with any judge of the court. Federal Rules of Civil Procedure, rule 5(e), 28 U.S.C.A. following section 723c; Casalduc v. Diaz, 1 Cir., 1941, 117 F.2d 915, 917, certiorari denied Casalduc v. Diaz Gonzalez, 1941, 314 U.S. 639, 62 S.Ct. 74, 86 L.Ed. 512.

eral district court, sitting in admiralty, was bound to respect and enforce the California statute of limitations applicable to wrongful death suits. While the opinion itself does not touch upon the question of laches, the conclusion might well be reached from a reading of the Garcia decision that (as will be later touched upon again), so far as state statutes of limitation are concerned, there is a difference between the treatment to be given in the admiralty to rights under the general maritime law on the one hand, and state-created rights on the other; with respect to the latter, the question is not one of laches, but of strict limitation. See Tesoriero v. Erie R. Co., D.C.E.D.N.Y., 1934, 6 F.Supp. 815. And this position is surely justifiable, at least on logical grounds, and independently of any other considerations. If the state creates a right, and the admiralty borrows it, then logic suggests it ought to be taken with all of its imperfections and limitations on its head, as the Garcia opinion hints. Moreover, the requirement of uniformity in admiralty furnishes no basis for argument to the contrary, because the enforcement of such state-created rights is, as I have said, under the maritime but local exception to the uniformity doctrine.

Despite all this, libelants contend that the delay in the commencement of suit on their part was excusable, and the remedy should not be barred at least until the sufficiency of their excuse has been passed upon and found wanting. This position they attempt to sustain by an analysis of the New York state death statute—an analysis calculated to demonstrate that the two-year limitation in the act is not a condition of the exercise or the assertion of the right, but a mere procedural requirement. And certainly some of the New York cases support this view. Under New York law, for example, a wrongful death complaint need not allege that suit was commenced within two years after the death occurred. Sharrow v. Inland Lines, Ltd., 1915, 214 N.Y. 101, 108 N.E. 217, L.R.A.1915E, 1192, Ann.Cas. 1916D, 1236. This decision is put upon the ground that by an amendment to the statute in 1880 the two-year period ceased to be a proviso—a condition upon the very existence of the right. True, the effect of the decision is somewhat weakened by Mossip v. F. H. Clement & Co., 1939, 256 App.Div. 469, 10 N.Y.S.2d 592, affirmed 283 N.Y. 554, 27 N.E.2d 279. There it was held that the two-year period is *not* extended by the existence of infancy or other disabilities excluded by a general procedural statute from the time to commence actions. Civil Practice Act, § 60. But another general procedural statute (to the effect that actions may be effectively "commenced" by delivery of a summons to a sheriff; Civil Practice Act, § 17) was recently held applicable to wrongful death suits. Kerr v. St. Luke's Hospital, 1940, 176 Misc. 610, 28 N.Y.S.2d 193, affirmed 262 App.Div. 822, 29 N.Y.S.2d 141, affirmed, and certified question answered in the affirmative 287 N.Y. 673, 39 N.E.2d 291. From these cases the libelants argue that the New York-created right of wrongful death is not *conditioned* upon the bringing of suit within two years. Therefore, they say, the two-year requirement is merely procedural, and it follows that the federal district court, sitting in admiralty, is free to apply the law of the forum, namely, that suit is not barred absolutely by the running of a state statute, but only if the suitor is guilty of laches.

Before I touch upon this problem, which I consider basic here, I ought to mention one other contention made by libelants. They cite a number of decisions (e. g., Crapo v. City of Syracuse, 1906, 183 N.Y. 395, 76 N.E. 465; MacDonald v. City of Beacon, 1944, 183 Misc. 1068, 50 N.Y.S. 2d 295) which talk about the time of "accrual" of the cause of action created by the wrongful death statute. All of these cases are to the effect that the action does not accrue until an administrator has been appointed. In the case at bar the date of appointment was May 17, 1946, and the libel was filed on May 20, 1946. But the decisions discussed by libelants in their brief, and which I have just mentioned, deal, not with the death statute two-year period of limitation as such, but with the sufficiency of notice to municipalities under other statutes making the "accrual" date of any cause of action based on negligence critical. In other words, these cases are not at all to the effect that the two-year period can be enlarged, as an examination of the Crapo

case, supra, will show. There, notice was given to the municipality 18 months after decedent's death, and suit was commenced within 23 months after that event. A general New York statute designed to protect municipal corporations against stale tort claims, L.1886, c. 572, provided for the giving of notice within 6 months after the cause of action "accrued", and for the commencement of suit within one year after that date. In the Crapo case the administratrix had been appointed 16 months after decedent's death. It was held under the statute that the notice and the commencement of action (respectively 2 months and 7 months after appointment of the administratrix) were both timely, because the date of the appointment was the date of "accrual" of the action. But it will be noticed that the suit was also timely under the two-year limitation. It is, therefore, easy to understand why such cases have been called sui generis. Lundberg v. Robins Dry Dock & Repair Co., 1941, 261 App.Div. 907, 25 N.Y.S.2d 187. And it was squarely held in Leun v. Brimmer, 1922, 203 App. Div. 643, 197 N.Y.S. 3 (appeal dismissed 237 N.Y. 629, 143 N.E. 770) that the two-year limitation on a wrongful death action runs from the date of decedent's death, and not from the time of the appointment of the administrator ("accrual" of the cause of action). And so, for purposes of this motion, I can find nothing in any New York case in any way modifying the clear language of the statute, which plainly bars a remedy for wrongful death unless it be commenced within two years after date of decedent's death.[2]

I turn back to what I consider the real problem: When suit under the New York death statute is brought in the admiralty, is it barred absolutely by the running of the New York state statute, or only if the suitor is guilty of laches?

As I have said, libelants' theory is the familiar one that statutes of limitation generally affect the "remedy" and not the "right" and, therefore, will be applied in accordance with the law of the forum. And admiralty will not withhold a remedy, where the right claimed is under general maritime law, unless a suitor has, by unexcused inaction on his part coupled with detriment to his adversary, lost the remedy which he seeks. State statutes of limitation are treated merely as guides in determination of laches, and not as absolute rules. The admiralty has gone very far in the application of this principle.

Thus it might be supposed that where the period of limitation is clearly a *condition* of the assertion of the right given by state statutes and borrowed by the admiralty, there would be no room in the latter for the application of the doctrine laches. But curiously enough, even that proposition is not supported by some of the cases. In The Harrisburg, 1886, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358, libelants' decedent was drowned off Martha's Vineyard, and fault was claimed against a steamer belonging to the Port of Philadelphia, where she was duly enrolled in accordance with the laws of the United States. The court refused to say whether the Pennsylvania or the Massachusetts death statute could be invoked under the circumstances, because the suit was too late under either statute; and in the course of its opinion (at page 214 of 119 U.S., at page 147 of 7 S.Ct., 30 L.Ed. 358), it was particular to point out that:

"The statutes create a new legal liability, with the right to a suit for its enforcement, provided the suit is brought within twelve months, and not otherwise. The time within which the suit must be brought *operates as a limitation of the liability itself* as created, and not of the remedy alone." (Italics mine.)

On principle, it seems that in such a case it would be inconceivable that the doctrine of laches would play any part, because the late libelant is really in the position of asserting a right which does not exist. Nevertheless, the court in The Harris-

---

[2] Libelants' brief does not make the point clear, but I suspect their reason for citing these "accrual" cases bears on the time limitation contained in the Suits in Admiralty Act, 46 U.S.C.A. § 745. One of the respondents here being the United States, it is subject to a suit under the statute only if it be brought "within two years after the cause of action arises". As will be seen, it is unnecessary for me to decide this question.

burg goes on to explain that the power of the admiralty court to allow an equitable excuse for delay in suing did not arise, *because in that case no excuse was shown.* There are other decisions of similar import. In Mejia v. United States, 5 Cir., 1946, 152 F.2d 686, the Louisiana death statute was invoked. The court pointed out that (152 F.2d 686, at page 688):

"The one-year limit of Article 2315 is not in the nature of a limitation but is a peremption, and, unless the right created by the Article is exercised within the one-year period *it ceases to exist* and is completely lost." (Italics mine.)

And yet in that very same case the Court adverts to the fact that there were no equitable reasons set forth sufficient to justify the delay in the filing of the libel. Moreover, it has been squarely decided in this circuit that a libelant, invoking this very New York state death statute after the expiration of two years from the decedent's death, ought to be permitted to amend his libel, and to set forth facts which would toll the statute of limitations, or to show that he was not guilty of laches in failing to bring the suit within the two-year period. The Sydfold, 2 Cir., 1936, 86 F.2d 611.

On the basis of these cases, one might well infer that failure to commence suit under the New York death statute within two years can be excused. The Sydfold, supra. Some of them suggest that excuses can at least be entertained even under a statute making it inescapably clear that the time limitation operates to limit the liability itself. The Harrisburg, supra.

But an examination of the case report in Western Fuel Co. v. Garcia shows (257 U.S. 233, 338, 42 S.Ct. 89, 91, 66 L.Ed. 210) that the losing counsel argued for the rule of laches, cited The Harrisburg, supra, and urged that under the California statute the time limitation was not of the "essence of the right" to sue. The Court, apparently recognizing that the time limitation was procedural merely quotes the California statute in the margin, 257 U.S. 233, 239, 42 S.Ct. 89, 66 L.Ed. 210. Yet it then proceeds to the conclusion that the District Court erred in holding that the right of action was "not barred" under the state statute of limitation. No mention is made of laches, and the rationale of the decision seems to be that the time limitation was part and parcel of the right, even though it was to be found in a statute strictly procedural.

If this suit were in equity under a state-created right, there would be no problem: Guaranty Trust Company v. York, 1945, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079, 160 A.L.R. 1231, would supply the complete answer. There a federal judge, sitting in equity, was denied the power to give only qualified application (laches) to a state statute of limitation, at least in a diversity case where the plaintiff was invoking a state-created right. The substance-procedure test (or the remedy-right test) was, in effect, rejected; it was pointed out that no general formula of decision constructed on these words would be adequate, because each word itself employs "different variables depending upon the particular problem for which it is used". I suggest that the decision in Guaranty Trust Company v. York, supra, expresses a federal policy (326 U.S. at page 112, 65 S.Ct. at page 1471, 89 L.Ed. 2079, 160 A.L.R. 1231): "The operation of a double system of conflicting laws in the same State is plainly hostile to the reign of law."

Of course, the York case involves nothing but equity jurisdiction founded on diversity. Our Circuit Court of Appeals has said (Gilbert v. Gulf Oil Corporation, 2 Cir., 1946, 153 F.2d 883, 886, reversed on other grounds, Gulf Oil Corporation v. Gilbert, 330 U.S. 501, 67 S.Ct. 839) that a policy which is enforced under maritime law is not necessarily operative at common law or in equity, and vice versa (citing Canada Malting Co. v. Paterson Steamships, 1932, 285 U.S. 413, 423, 52 S.Ct. 413, 76 L.Ed. 837). But the Supreme Court, in its Gulf Oil decision, goes so far as to say that the District Court has the power to apply a general policy like forum non conveniens even in diversity cases at common law. On this basis, surely if the York case expresses a general federal policy toward the application of state statutes of limitation in equity, then that general policy ought to be applied in admiralty in the enforcement of remedies borrowed from the state under the "maritime but local" doctrine. For even on the assumption that a claim predicated up-

on a state-created remedy, and sought to be enforced in admiralty, did *violence* "to a precept of the admiralty law that causes of action for personal injury die with the person," the Supreme Court reversed a decree dismissing that claim. Just v. Chambers, 1941, 312 U.S. 383, 387, 391, 61 S.Ct. 687, 691, 85 L.Ed. 903. It might also be wise to consider the effect of a ruling that a death action barred under New York law can be revived, or at least, enforced in the admiralty, unless the libelant has been guilty of laches.

Suppose a plaintiff were to bring suit for damages under the New York death statute in the federal common law court under the diversity jurisdiction. Manifestly an outright dismissal would be required on a showing that the complaint was filed more than two years after the date of decedent's death. Laches, or want of laches, would make no difference. Could the plaintiff, prior to judgment, then transfer the cause to the admiralty docket, as is often done in suits based upon maritime tort when want of common law jurisdiction is disclosed? If the New York two-year period is, in fact, tolled in admiralty during the period of excusable delay, then surely the transfer I speak of could and would be made. We would then have the spectacle not only of a "double system of conflicting laws in the same state" but a double system in the same court in actions founded on the same state statute. The judge, sitting in common law, would have no alternative but to dismiss the complaint, but before actually pronouncing judgment, he could by changing his role to that of a judge in the admiralty, not only entertain the complaint but give the relief sought.

The inordinate length of this opinion is explained by the fact that any judge, certainly one sitting in admiralty, is, and ought to be, reluctant to deny a litigant his day in court because he has not promptly brought suit, particularly in cases like this where delay may be fully explained by the character of the accident, the difficulty of

investigation, and the impact of the New York Workmen's Compensation Statute, Consol.Laws, c. 67, or the Federal Longshoremen's and Harbor Workers' Act, 33 U.S.C.A. § 901 et seq.[3] And for this reason, I invite libelants' advocate again to scrutinize the facts in the case at bar, and to determine whether, actually the last day to bring suit was May 19, 1946. Cf. Joint Council Dining Car Employees Local 370, et al. v. Delaware, L. & W. R. Co., 2 Cir., 1946, 157 F.2d 417, 420. If there is no escape from this, I suggest that libelants' advocate reexamine the New York, and possibly the federal cases (for what they may be worth), involving statutory periods of limitation which expired on Sunday (e. g., Belding Heminway Co. v. Future Fashions, D.C.S.D.N.Y., 1943, 55 F.Supp. 39; Lynch v. Vincent, D.C.W.D Mo., 1944, 55 F.Supp. 44; and Sherwood Bros. v. District of Columbia, 1940, 72 App.D.C. 155, 113 F.2d 162). None of the cases I have seen, whether in the New York or the federal courts, seem to give much comfort to the libelants on this point, which probably explains the fact that on the argument of this motion libelants' advocate expressly abandoned any contention that here the time was enlarged, or affected procedure-wise, merely because the last day of the statutory period fell on Sunday. But if I am to sustain the exceptions on broader grounds, as I feel I must, I would like to be sure that there is no consideration, either of fact or of law, which would make such a decision unnecessary.[4]

I hold that a remedy under the New York statute is barred in admiralty, independently of the question of laches, after the expiration of two years from the date of the decedent's death, because it is a state-created right borrowed by the admiralty, and also because the two-year period of limitation should be enforced according to its letter as a matter of federal policy, whether that limitation can be correctly described as a matter of "substance" or of "procedure". But I will not translate this

---

[3] I am not here suggesting that libelants' excuse for inaction under the circumstances of this case is, or is not, adequate. I am simply not passing upon it.

[4] I have in mind specifically situations like that in Joint Council Dining Car Employees Local 370, et al. v. Delaware, L. & W. Co., 2 Cir., 1946, 157 F. 2d 417, 420.

decision into an order until I am advised by libelants, at least within a reasonable period, that they have found nothing in the facts, or in any rules of procedure, federal or state, which affects the computation of time as it was originally presented on the argument. Subject to this, I sustain the exceptions.